**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2944-24

RYAN ROBERTS and
REBECCA ROBERTS,

      Plaintiffs-Appellants,

v.

KELLIE KRAUSE, COUNTY
OF GLOUCESTER, and
GLOUCESTER COUNTY
TAX ASSESSOR'S OFFICE,

      Defendants-Respondents.

_____

        Submitted May 12, 2026 – Decided July 21, 2026

        Before Judges Gooden Brown and Torregrossa-O'Connor.

        On appeal from the Superior Court of New Jersey, Chancery Division, Gloucester County, Docket No. C-000005-22.

        Charles A. Fiore, attorney for appellants.

        Lauletta Birnbaum, LLC, attorneys for respondent Kellie Krause (Dante B. Parenti and Nicholas S. Urban, of counsel and on the brief).

Eric C. Campo, Gloucester County Counsel, attorney for respondents County of Gloucester and Gloucester County Tax Assessor's Office (Scott D. Burns, Assistant County Counsel, on the brief).

PER CURIAM

This property dispute returns to us after we previously reversed as premature a prior Chancery Division order granting permanent injunctive relief to defendant Kellie Krause and dismissing plaintiffs Ryan and Rebecca Roberts' complaint, remanding for further discovery and proceedings. See Roberts v. Krause, No. A-3257-21 (App. Div. Oct. 2, 2023) (slip op. at 1, 9-10). Asserting interference with their property and other related claims, plaintiffs on remand filed an amended complaint against Krause, this time adding as defendants both Gloucester County and the Gloucester County Tax Assessor's Office,[1] seeking access to a portion of a fifty-foot-wide gravel strip of land known as Grandison Terrace located upon the Krause's property and running alongside the lot on which plaintiffs reside and connecting various not-yet-developed rear lots also owned by plaintiffs to a main roadway, Janvier Road. After discovery, all

---

[1] Both Gloucester County and the Gloucester County Tax Assessor's Office are represented together by County Counsel and at all relevant times act jointly. Thus, we reference them collectively as "the county" or "the county defendants" where appropriate. Additionally, we reference the Tax Assessor's Office (TAO) when referring to the office as a whole and Craig Allen Black, the Tax Assessor, at times relevant to the appeal, when referring to him individually.

2                                                                              A-2944-24

parties moved for summary judgment, and the Chancery Division found in favor of defendants, dismissing plaintiffs' complaint with prejudice.

Plaintiffs appeal contending the trial court erred in dismissing their complaint because they enjoyed a longstanding right of way or easement across the front portion of Grandison Terrace (front portion),[2] which existed as an access road as a result of an earlier subdivision. Alternatively, they contend they should have been granted an easement by necessity or other equitable easement allowing plaintiffs continued use of the front portion to access Janvier Road from the rear lots. According to plaintiffs, the front portion of Grandison Terrace was properly reflected on prior tax maps until 2021, when the TAO incorrectly determined the front portion is located on private property belonging to Krause and improperly removed it from the current tax map, thereby reflecting that land as included within the boundaries of the Krause lot. Plaintiffs also contend the court improperly dismissed their claims against the county defendants on the basis of tort claims immunity, see Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3.

---

[2] A gravel path continues beyond the disputed front portion, running through the remainder of plaintiffs' rear lots. The parties do not contest plaintiffs' access to the rear portion of Grandison Terrace beyond Krause's property line.

A-2944-24

We have reviewed the record in light of applicable legal principles, and conclude the trial court properly found final approval of Grandison Terrace as an access road was never properly recorded, the disputed area is now rightfully owned by Krause and part of her private property, and plaintiffs did not establish entitlement to an easement by necessity as their rear lots are not landlocked. We further conclude plaintiffs advance no argument on appeal warranting reversal of the trial court's finding the county defendants immune from suit and dismissing all claims against them.

However, we are constrained to remand for further proceedings as we have been provided no record on appeal by which to assess the merits of plaintiffs' claims the trial court erred in failing to grant other forms of equitable easements or remedies.[3] We therefore affirm in part, and remand in part for further proceedings in accordance with this decision.

---

[3] The record on appeal consists of various historical documents and public records concerning the property and other discovery. Plaintiffs' original and amended complaints alleged only a claim for an easement by necessity. The singular transcript provided to us reflects summary judgment oral argument which contains no mention of plaintiffs' alleged equitable easement arguments, and the trial court's written decision makes no reference to those claims. Krause's brief on appeal represents plaintiffs raised the claims for additional forms of easements on summary judgment, but nothing in the record explains what if anything was raised, argued, or what the court determined.

A-2944-24

I.

A.

The summary judgment record is voluminous, but many of the facts are undisputed. Plaintiffs and Krause own neighboring lots fronting Janvier Road in Monroe Township (the township). Grandison Terrace refers to an unpaved accessway situated between Lot 49, purchased by Krause in 2004, and Lot 41, purchased by plaintiffs in 2017, leading to a series of undeveloped rear lots, Lots 42 through 48, later purchased by plaintiffs in 2020. The parties' lots were once part of a single parcel owned by John Grandison,[4] who first commenced plans to subdivide the land in the late 1960s.

At the time Grandison pursued subdivision, the township's ordinance addressing land subdivisions mandated that once the applicant obtained approval from the county and the township, "[t]he final plat . . . be filed by the subdivider with the county recording officer within [ninety] days from the date of such approval. If any final plat is not filed within this period, the approval shall expire." Township of Monroe, N.J., Subdivisions of Land art. V, sec. 4(i)

---

[4] The relevant records at times reflect John Grandison as the sole owner or applicant related to the single parcel, but other documents list Grandison's wife Vivian as joint owner or applicant. To avoid confusion as the distinction is not pertinent to this appeal, we reference Grandison singularly unless referring to events after John Grandison's death.

(June 8, 1956). Further, the county's Subdivision Review Manual directed, once an applicant was "given" county and municipal approval, "the applicant must file the plat or deed with the County Clerk within ninety days." Gloucester Cnty. Plan. Bd., Subdivision Review Manual at 13-14 (1966).

Records concerning the property reveal Grandison's original proposed major subdivision included Grandison Terrace, running the depth of the entire parcel and connecting all lots to Janvier Road. Preliminary approval was granted in March 1969, and, although the Gloucester County Planning Board recommended final approval for subdivision into nineteen lots, county records show no final approval was ever recorded. Although Grandison eventually constructed curbing and sidewalks on Grandison Terrace in accordance with his preliminary plan, the accessway remained at all times an unpaved, gravel strip.

More than six years later, in April 1976, Grandison submitted a new application to the township again seeking approval for a major subdivision of the single parcel into nineteen lots. The application stated no prior subdivision approval had been granted. Later that year, the township's Planning Board wrote to the county's Planning Board on the subject of "the Sketch Plat of John Grandison," advising:

> Approvals have apparently expired. We can find no evidence that the subdivision was ever filed. The

6

> applicant is starting over with this subdivision, and is now at the Sketch plat stage. We have assigned this a new number . . . . Please review this as a new submission.

Although this application received preliminary approval in May 1978, two years later, the State Pinelands Commission recommended denial of final approval finding related septic tank construction "[in]consistent with the Pinelands Protections Act." Once again, county records reflect no final approval was filed.[5]

In June 1988, Grandison submitted a new application related to the property, seeking a minor subdivision. The county and the Pinelands Commission approved the application and the parties do not dispute the parcel was then divided into at least five smaller lots. Grandison died in 1996, and the property transferred by survivorship to his widow, from whom Krause purchased Lot 49 in August 2004.

The deed memorializing Krause's purchase of Lot 49 describes the property, which in measurement and description encompasses entirely the front portion of Grandison Terrace connecting to Janvier Road. The corresponding

---

[5] The parties present records reflecting various transfers of property between Grandison and others over the history of the parcel. Because these transfers are not material to the parties' easement dispute, we omit that information from the summary of pertinent applications concerning the property.

A-2944-24

tax map at the time, however, showed the front portion of Grandison Terrace as running between Lots 41 and 49, but falling outside the boundaries of both.

Plaintiffs' property was at one point owned by Slice of Dream, LLC, which made inquiries and applications related to the property's boundaries. Records of the October 16, 2007 meeting of the township's Board of Adjustment reflect a representative for Slice of Dream, LLC acknowledged "some incorrect assumptions" that "Grandison Terrace was a public right of way because it was indicated and shown on the township map as well as in the [c]ounty records," despite "[t]he fact it is not a public right of way." The minutes further explained Krause instead "own[ed] a portion of Grandison Terrace" and Slice of Dream, LLC was discussing a possible easement by agreement with Krause. No record of any easement exists, and there is no evidence any agreement was reached concerning access.

After plaintiffs purchased Lot 41 in 2017, they began utilizing the front portion of Grandison Terrace to access a shed built on their property. Conflict arose between the parties, and Krause complained of plaintiffs' misuse of and damage to the property, including the dumping of garbage. Ultimately, in late 2021, Krause constructed a fence restricting access to the front portion of Grandison Terrace.

A-2944-24

After receiving an inquiry about Grandison Terrace from Krause and additional information from plaintiffs, in November 2021, the TAO requested their contracted engineering firm, Remington & Vernick Engineers (R&V), investigate the dispute. Subsequently, Stephen Young, an engineer at R&V, emailed the TAO as well as Charles Adamson, another R&V engineer, and reported:

> We reviewed the information provided along with pulling the current deeds for Lots 49 & 41. It appears the portion of what is being called as Grandison Terr., does belong to [L]ot 49. The issue that remains is the portion of Grandison Terr., along [L]ots 42-48. We can't determine how this was created. Looking at prior tax maps it appeared to be a part of Lot 45. No deeds were found for [L]ots 42-44, 46-48. Based on the information available it [is] our opinion this is not a public right of way.

On December 5, 2021, Adamson offered a different view in an email to the TAO and Young. Adamson opined Grandison Terrace existed as a right of way that had never been properly conveyed for use as a public roadway, thus, recommending as a "solution . . . rededicat[ion of] Grandison Terrace by ordinance and deed filed with the county."

Later that month, the TAO corresponded with plaintiffs. Although plaintiffs acknowledged "the last deed . . . show[ed] [Krause] owning [the front] portion of the right [of ]way[,]" they insisted Grandison Terrace was a formal

right of way available for their use as it was referenced in the boundary descriptions on various other deeds to neighboring properties. Black advised, in relying on "County Counsel and [R&V]," and based on "all the information provided," Grandison Terrace "should have never appeared on the tax map" and emphasized "[his] office is not the final arbiter of ownership" as it "work[s] from filed deeds and filed site plans."

In May 2022, Grandison's widow certified her husband and she "subdivided [the] land to create[] Grandison Terrace . . . as a right of way for access to . . . [L]ots 42-48 and for future dedication to the [t]ownship of Monroe as a road." She explained Grandison Terrace "was put on the tax map for the purpose of reserving this area as a right of way," and the Grandisons "were not taxed on this . . . slice of land during the entire time [they] owned it." As a result, she described selling her home to Krause as a "corner lot" never intending to convey with it the right of way.

On June 14, 2022, a township zoning official informed plaintiffs "no documentation finalizing the subdivision" existed. Plaintiffs asserted the right of way was critical to developing the rear lots in the future.

In a July 2022 email forwarded to Krause, Black explained that he, R&V, and County Counsel reviewed all records and were "still of the opinion that the

10

tax map . . . with Krause's owning the area of Grandison Terrace[,] is correct." He acknowledged Grandison's attempts to develop Grandison Terrace as an access road, but explained Grandison never succeeded in finalizing his efforts, thus making its inclusion in earlier tax maps incorrect. Thereafter, the tax map was amended to fix the previous errors in depicting Grandison Terrace in July of 2022.

B.

In 2022, plaintiffs "filed [their first] verified complaint and order to show cause seeking injunctive relief restraining Krause from taking further action to interfere with [plaintiffs'] claimed property rights in using Grandison Terrace and ordering Krause to remove the fence." Roberts, slip op. at 5-6. The county was not a party to that litigation. Id. at 5 n.1. Despite plaintiffs' assertion they were still awaiting discovery and additional documents, "[t]he court denied the order to show cause and announced it was adjudicating the matter in a summary fashion because there were no other matters to adjudicate." Id. at 7.

After the court granted Krause permanent relief, plaintiffs appealed, and we reversed and remanded, determining "the material facts in this case were not developed to a point where the court could adjudicate the matter in a summary

A-2944-24

fashion at the order to show cause stage." Id. at 1, 9. We cited multiple outstanding disputed factual issues including:

> whether Grandison Terrace was abandoned; whether Krause had paid taxes on the road; why Grandison Terrace was on the tax map from 1969 until 2021; why Grandison Terrace was removed from the tax map; who cared for the roads; and whether there could be other access to Lots 42-48.
>
> [Id. at 8-9.]

On remand, plaintiffs filed their amended complaint on December 27, 2023, including as new parties the county and the TAO. The complaint alleged intentional interference with property against Krause; due process violations by the county defendants; and private nuisance and unlawful taking against all defendants, and sought "establishment of easement by necessity and legal right of way for the benefit of . . . plaintiffs against [all] defendants." Plaintiffs' asserted, "The value of the[ir] rear lots . . . substantially diminished in value in that they are landlocked. If the lots had access to Janvier Road each lot would have a value of $100,000. If the right of way is not granted it would cost $50,000 to construct a road on one lot." Plaintiffs' counsel later clarified plaintiffs lacked any formal or expert "estimates or appraisals" for their figures.

In their respective answers, no defendant disputed the subdivision creating Grandison Terrace received preliminary approval. Each maintained the

12

approval was never formally finalized and therefore Grandison Terrace as a public roadway was never officially created.

Discovery continued throughout 2024. At deposition, Black explained his duties as tax accessor included maintenance of the county's tax map, and the county contracted R&V to assist in updating and maintaining the tax maps. He described Adamson's role as an R&V engineer, identifying him as the person who "would probably make the final decisions" and "sign off on the maps." Black explained Grandison Terrace had been included in earlier tax maps in error "due to [its] not having a so-called final approval." He clarified he bases his conclusions on "tax maps, deeds, and filed plans."

Adamson testified at deposition that he maintained the tax maps and resolved issues and mistakes related to it. He explained he reviewed the history of Grandison Terrace, and although acknowledging his initially opining to the contrary, he ultimately concluded in his final determination based on review of all the records, the front portion "is not a public right of way." He explained final approvals from various municipal and county boards must be officially filed. None were filed here. He did not dispute the historical "intent was to have a road there," but explained there is no legal "right of way there" as the intent never materialized.

A-2944-24

Adamson also opined the rear lots would not be considered landlocked if their owner also owned either Lot 41 or Lot 49 which face and abut Janvier Road. According to Adamson, Lot 41, owned by plaintiff, provides access to their rear lots.

C.

All parties moved for summary judgment. The record provided on appeal reflects plaintiffs claimed relevant documents, including tax maps and subdivision applications, showed a legally created right of way existed over the front portion of Grandison Terrace providing access to what they claimed were their otherwise landlocked rear lots and alleged they suffered harm by the removal of the front portion of Grandison Terrace from the official tax map in 2021.[6] Plaintiffs cited Grandison's intent as demonstrating the roadway's historical existence as an access way, and noted Grandison Terrace's tax-free status and inclusion in the tax map until 2021, when it was determined the front portion belonged to the Krause Lot 49 and was private property. Plaintiffs

---

[6] We derive plaintiffs' arguments from the summary judgment argument record, and the trial court's decision summarizing plaintiffs' contentions. Again, plaintiffs have provided no transcripts or documentation reflecting any arguments made by plaintiffs regarding their right to an easement by necessity or raising alternative types of easements before the trial court. Nor have any orders or decisions of the trial court concerning alternative easements been provided. And no oral argument was requested on appeal.

14

A-2944-24

acknowledged the front portion was incorporated in the legal metes and bounds of Krause's property as reflected in the Krause deed. Plaintiffs argued, however, the physical attributes of the front portion, such as the curbing, evidence its use as an access road and emphasized the inclusion of the specific "curvatures" at the end of Grandison Terrace on the tax map.

Plaintiffs contended they bought the rear lots "with the understanding that Grandison Terrace was their access to Janvier Road." Although our review of the transcript shows no references to proposed easements were made at oral argument, the trial court's decision reflects plaintiffs asserted creation of an easement by necessity was required as their rear lots would be landlocked without access via the front portion of Grandison Terrace.

Krause countered, arguing: (1) her deed unquestionably included the front portion of Grandison Terrace within the legal description; (2) she has paid taxes on the front portion since 2021 and maintained and insured the property, and "[her] mortgage encumbers it"; (3) the subdivision seeking creation of the roadway was never perfected or recorded as required; (4) the rear lots are not landlocked as they have access to Janvier Road "through Lot 41, which plaintiffs also own"; and (5) as the owner of "the front portion of Grandison Terrace," she

A-2944-24

legally restricted access to "prevent this portion of [her] property from being damaged."

The county advanced three arguments: (1) "Grandison Terrace was incorrectly [included] on the [earlier] tax map" despite its lack of final approval; (2) plaintiffs did not establish damages; and (3) the county defendants are immune pursuant to the TCA, and there was no allegation of conduct beyond the scope of employment or willful misconduct. The county defendants further argued it was undisputed and Black certified plaintiffs owned Lot 41 prior to their purchase of Lots 42-48 which rendered those lots "no longer landlocked." Black summarized: he "is required to adhere to the last deed filed"; he is "responsible for the [t]ax [m]ap" which "is not the indicator of ownership"; he is "not required to continue with [any] error" on the tax map; "plaintiff[s'] documents were not perfected to indicate ownership"; and his "actions were not intended to assist any one side in this case."

The court made findings and conclusions on the record, which were subsequently memorialized in its April 11, 2025 written decision. After detailing the case's procedural and factual history and the parties' arguments, the court set forth the familiar standard for summary judgment and applicable legal principles, and identified the subdivision procedure for the township and county

16

at the relevant times. The court then found, "[d]espite the voluminous history of the land," there were "no genuine issues of material facts."

The court specifically determined "plaintiffs . . . failed to set forth sufficient facts demonstrating that Grandison ever received final approval for the proposed subdivision" or that their property is landlocked. Citing the 1976 letter from the township's Planning Board, the court determined the subdivision creating Grandison Terrace was never perfected and "the right of way was only included in previous tax maps in error." Additionally, the court determined there was "no evidence that plaintiffs' property is landlocked" as "plaintiffs fail to dispute[] that each of their [l]ots are accessible through Lot 41, which plaintiffs also own[,]" and thus an easement by necessity would not be appropriate.

The court found unavailing plaintiffs' argument that Krause's fence "wrongfully blocked the right of way." According to the court, "[n]othing . . . indicates that this fence was constructed in any illegal manner or located anywhere besides on . . . Krause's property," noting Krause's contention "public trespass on Grandison Terrace was disturbing the use of their property."

Turning to the county defendants, the court found "the TCA shields them from any liability in this matter" as "the record is devoid of any evidence of" wrongful actions or "willful misconduct" on behalf of the county. The court

noted "the tax map is not a property right," and is "not an exact thing." Thus, the inclusion and removal of the front portion of Grandison Terrace did not rise to the level of overcoming the county defendants' protection from suit.

The court never identified any claims or addressed any arguments by plaintiffs pertaining to any other types of easements.

## II.

On appeal, plaintiffs argue the trial court prematurely granted summary judgment in favor of all defendants, alleging discovery was not yet complete, and "the trier of fact [could not] make a decision based upon the record submitted" as "credibility determinations" remained. Although conceding "many of the facts were not in dispute" and the "voluminous documents . . . cannot be refuted by testimony" because they "speak for themselves and are, in fact, self-authenticating," plaintiffs contend a trial was necessary as Grandison Terrace "whether by mistake or happen circumstances [sic] exists still today." Thus, they assert they have been damaged by the blocked access to the right of way.

Plaintiffs further allege the trial court erred in not granting an easement by necessity. They contend the court never identified any "access to the rear lots other than via Grandison Terrace." Plaintiffs claim they demonstrated they

A-2944-24

have suffered and "will continue to suffer substantial, irreparable harm as a result of not having access to their lot[s] which would otherwise be landlocked without an easement" and purchased the rear lots with the intent of using the easement requiring equitable relief. Although not pled or sought as relief in their complaint, plaintiffs also assert they were alternatively entitled to a variety of other easements including "a quasi[-]easement or easement by estoppel," an "implied easement," or an "easement by acquiescence."

Regarding their claims against the county defendants, plaintiffs concede in their merits brief the county defendants are "somewhat protected by the [TCA]." Although plaintiffs did not name Adamson or another individual as a defendant in this litigation, plaintiffs raise a new argument before us that Adamson, as an independent contractor providing services to the county, "should not be afforded immunity."

Krause argues voluminous discovery revealed no record that a subdivision including Grandison Terrace was ever finally approved, perfected, or recorded, as required by applicable law at times relevant to this matter. Thus, Krause claims her deed, reflecting her private ownership of the front portion of Grandison Terrace since 2004, is dispositive of the dispute, and the court properly found plaintiffs had no legal right to access over Krause's property.

19

She further argues the trial court correctly held plaintiffs' property is not landlocked, as the record demonstrates plaintiffs own Lot 41, offering viable access to Janvier Road from plaintiffs' rear lots.

Krause argues plaintiffs waived arguments requesting any easement type other than an easement by necessity, as none were pled in the complaint or properly asserted before the trial court. However, Krause's brief on appeal acknowledges plaintiffs never amended their 2023 amended complaint and for the first time in moving for summary judgment in March 2025 requested the trial court establish a quasi-easement or easement by estoppel.

The county defendants contend the trial court properly determined they enjoyed TCA immunity noting only "more than ordinary negligence" can pierce such immunity and plaintiffs have failed to so allege. They reiterate their arguments before the Chancery Division and emphasize plaintiffs cannot show perfection of any subdivision allegedly creating the right of way or what damages they incurred "hav[ing] no experts, no estimates, nor any appraisals." The county defendants also argue neither R&V nor their employee, Adamson, are subject to liability in this matter as they are not named parties or, alternatively, enjoy derivative immunity.

III.

Summary judgment decisions are reviewed de novo, applying the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (internal quotation marks omitted) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

A.

Preliminarily, we conclude plaintiffs' arguments concerning the county defendants are waived, as plaintiffs failed to pursue those claims in their merits brief. See Midland Funding, LLC v. Thiel, 446 N.J. Super. 537, 542 n.1 (App.

Div. 2016) (when appellant's notice of appeal lists issues later "not briefed on appeal," we "consider [the] appeal from those [issues] abandoned . . . [and] waived"). Indeed, plaintiffs' brief makes no argument that the county or the TAO as public entities are not immune from suit under the TCA, and states only plaintiffs' acknowledgment the county defendants are largely immune under the TCA. Thus, we consider abandoned any challenge to the trial court's dismissal of all claims against the named county defendants.[7]

As to the newly debuted claim that Adamson, a non-party to the litigation, does not enjoy immunity and somehow bears liability or binds the county defendants, we deem that contention waived, as neither raised before the trial court, see Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)) ("[A]ppellate courts will decline to consider

---

[7] In their notice of appeal (NOA) and case information statement (CIS), plaintiffs identified the following issues on appeal: (1) "The actions of the [TAO] in revising the tax map was arbitrary and capricious in removing Grandison Terrace"; (2) "The actions of the [c]ounty . . . in removing the right of way/easement for the benefit of the plaintiffs' constituted an unlawful taking of this property without due process under the law"; (3) "The trial court erred in not establishing an implied easement by necessity or in the alternative a quasi[-]easement or easement by estoppel for the benefit of the plaintiffs"; (4) "The trial court erred in not finding that the action of defendants constituted an interference with their property rights"; and (5) "The trial court erred in granting Summary Judgment [o]n behalf of the defendants based upon issues of material facts that were not addressed by the trial court as directed by the . . . Appellate Division."

questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."), nor identified as an issue in plaintiffs' NOA or CIS.[8]  Thus, we decline to consider plaintiffs' belated attempt to now attach liability to a non-party who did not participate in the litigation, when they never sought to amend their complaint before the trial court to include Adamson in his capacity as an independent contractor.  See Knauf v. Elias, 327 N.J. Super. 119, 127 (App. Div. 1999) (plaintiffs using the fictitious party rule to list unknown defendants must subsequently amend their complaints to include the party once his or her identity becomes known).

B.

Turning to plaintiffs' claims against Krause, having reviewed the record, we are satisfied no issue of material fact existed that warranted further consideration by a factfinder regarding whether the front portion of Grandison

---

[8]  Rule 2:5-1(h)(2) and (3) requires a plaintiff "to file an amended [CIS] in the event there is any change with respect to any entry on the filed [CIS]" and "any failure to comply with the obligation to file and seasonably amend a [CIS] shall be grounds for such action as the appellate court deems appropriate, including . . . on the court's own motion, dismissal of the appeal."  Appellate records do not reflect plaintiffs ever amended their CIS to include this argument.

Terrace was ever formally established or expressly created as a right of way. As the trial court correctly found, the law at all relevant times required final approval for a subdivision to be recorded. As the trial court also correctly reasoned, without a recorded subdivision approval officially creating as a roadway Grandison Terrace, it is not a legally established road, regardless of its owner's intent.

The parties do not dispute that both the county Planning Board Subdivision Review Manual and controlling township ordinance at the time, see Township of Monroe, N.J., Subdivisions of Land art. V, sec. 4(i) (June 8, 1956); Gloucester Cnty. Plan. Bd., Subdivision Review Manual at 13-14 (1966), confirm that, even when an applicant receives necessary county and municipal approval, the applicant must file the approved deed or plat with the County Clerk within ninety days. The ordinance makes clear "if any final plat is not filed within this period, the approval shall expire." Township of Monroe, N.J., Subdivisions of Land art. V, sec. 4(i) (June 8, 1956) (emphasis added).

The significance of the recording requirement is critical and dispositive. Indeed, the township's current ordinance continues to require formal recording within a strict timeline of consequence, see Township of Monroe, N.J., Code § 175-59(B)(17)(a) (last amended 1992) ("Final approval of a major subdivision

shall expire [ninety-five] days from the date of signing of the plat unless within such period the plat shall have been duly filed by the developer with the county recording officer."), and modern statewide guidelines preserve this recording requirement for major subdivisions.[9] See N.J.S.A. 40:55D-54 (directing "[f]inal approval of a major subdivision shall expire [ninety-five] days from the date of signing of the plat unless within such period the plat shall have been duly filed by the developer with the county recording officer" and allowing, "for good cause shown[,] exten[sion of] the period for recording for an additional period not to exceed 190 days from the date of signing of the plat").

Although plaintiffs assert the subdivision creating Grandison Terrace was perfected, no documentation in the vast record confirms this assertion. In contrast, Krause provided records spanning several decades confirming the subdivision was never formally finalized in accordance with legal requirements, which were buttressed by the opinions of Black and Adamson, with expertise in the process, after researching the history of the lots.

---

[9] We also note roadways such as Grandison Terrace would be created via major subdivision. See Township of Monroe, N.J., Subdivisions of Land art. IV, sec. 4 (June 8, 1956) (defining "minor subdivision" as "[a]ny subdivision . . . not involving any new street or road . . . " and "major subdivision" as any other subdivision); see also Gloucester Cnty. Plan. Bd., Subdivision Review Manual at 12 (advising "[t]he determination of a major or minor subdivision is established by local ordinance").

A-2944-24

Further, and critically, Krause's deed describing the metes and bounds of her property corresponds to the current tax map, including the front portion of Grandison Terrace in its entirety within the boundaries of Krause's private property. Thus, the trial court properly held the prior tax maps erroneously reflected Grandison Terrace and were therefore properly corrected, and the record showed no dispute that Krause owns the front portion of Grandison Terrace, thus making her actions to block or restrict access to it by others lawful and appropriate. We perceive no error in the trial court's determining there was no genuine issue of material fact disputing the ownership and status of the land known as Grandison Terrace as private property.

We recognize plaintiffs contend discovery was not complete, but note plaintiffs also moved for summary judgment on the available record necessarily arguing the court could decide in their favor as there were no outstanding issues of material fact. See R. 4:46-2(c). Moreover, they fail to identify what if any outstanding information was anticipated but not yet obtained through discovery that would impact the trial court's sounds analysis. Credibility determinations could not fill the fatal void created by the absence of any official documentation or recording of Grandison Terrace's approval. Without official recording, Grandison Terrace was never a lawfully created road.

It was undisputed no party could produce proof Grandison Terrace was perfected; the legal description of the property in Krause's deed encompassed the portion of Grandison Terrace at issue; plaintiffs' rear lots abut Lot 41; and the TAO's responsibilities involve maintenance of the tax map using official deeds and filed plans. Thus, we are unpersuaded the voluminous discovery was somehow missing material information that would have likely been uncovered by continuation of discovery. See Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004) ("While . . . ordinarily decision on a summary judgment should be withheld until completion of discovery, nevertheless, discovery need not be undertaken or completed if it will patently not change the outcome."); Auster v. Kinoian, 153 N.J. Super. 52, 56 (App. Div. 1977) (stating a "plaintiff has an obligation to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action").

Additionally, we note our prior unanswered questions, which previously prompted our remand, have since been answered. See Roberts, slip op. at 8-9. The record now explains the genesis of the tax map error and change, the existing and non-existent records of Grandison Terrace's history, the intent of the owners at relevant times, the maintenance, use, and taxation of that portion of land, and the official boundaries and ownership rights of the relevant

properties. Now with a far more fulsome record, we perceive no genuine disputes of material fact remained concerning ownership or a formally established right of way.

C.

Plaintiffs next argue the trial court improperly denied their alternative request for relief in the form of an easement by necessity. We disagree.

An easement is "a nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder . . . to make some use of the other's property." Kline v. Bernardsville Ass'n, 267 N.J. Super. 473, 478 (App. Div. 1993) (omission in original) (quoting Leach v. Anderl, 218 N.J. Super. 18, 24 (App. Div. 1987)). "Easements are created (1) by express acts of the parties, (2) by implication, or (3) by prescription." Ibid. Proof of an easement's requirements must be made by clear and convincing evidence. Leach, 218 N.J. Super. at 26.

Plaintiffs' complaint alleges a right to an easement by necessity only, so we first address their expressly pled claim that an easement must be granted by law and by necessity. They contend, without access to the front portion of Grandison Terrace, their property is landlocked.

28

Easements by necessity are implied easements established to access landlocked parcels when landowners subdivide their land. Id. at 25. The request for such an easement requires a fact-specific inquiry "predicated upon the strong public policy that no land may be made inaccessible or useless." Id. at 25-26. "[E]asement[s] by necessity arise[] by operation of law where 'an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands owned by the conveyor.'" Id. at 25 (quoting 3 Powell, Real Property § 410 at 34-62 to 34-63 (1985 & Supp. 1987)). "Such an easement is found only in relation to the boundary conditions existing at the time of the original subdivision severing common ownership." Ibid.

"The duration and extent of such easements are influenced by the fact that 'necessity' is basic to their creation. When 'necessity' no longer exists the easement terminates." Ghen v. Piasecki, 172 N.J. Super. 35, 43 (App. Div. 1980). Further, easements by necessity, which require "absolute necessity," are distinct from quasi-easements, which require "nothing greater than a reasonable necessity." Leach, 218 N.J. Super. at 26 (quoting Adams v. Cale, 48 N.J. Super. 119, 130 (App. Div. 1957)).

We are satisfied the court properly determined the circumstances do not call for an easement by necessity. Plaintiffs do not dispute, and the undisputed

29

maps in the record confirm, Lots 42-48 are "located in the rear of Lot 41," which plaintiffs also own and do not dispute faces Janvier Road. Further, despite generally asserting they wanted to develop the rear lots, plaintiffs have submitted no plans to do so. They also do not dispute a new road could be constructed on their own property, raising only, and without expert support or documentation, "it would cost $50,000 to construct a road on one lot."

As Adamson highlighted, and the maps confirm, plaintiffs' rear lots are not landlocked from Janvier Road, as plaintiffs hold the key to access through their own property—Lot 41. Thus, we conclude the trial court properly found the record, viewed in plaintiffs' favor, would not allow a factfinder to conclude "absolute necessity" warranted the extreme relief of an easement by necessity. See ibid.

### D.

With respect to plaintiffs' argument they were entitled to an alternative easement, in their NOA, plaintiffs allege "[t]he trial court erred in not establishing an implied easement by necessity or in the alternative a quasi[-]easement or easement by estoppel for the[ir] benefit." In their merits brief they argue that a variety of alternative easements should have been

considered for their benefit including an implied easement, easement by estoppel, easement by acquiescence, and quasi-easement.

Krause counters this argument should be deemed waived because it was never pled in plaintiffs' complaint, and instead "plaintiffs waited until summary judgment to request the trial court . . . establish other forms of easements," suggesting plaintiffs did request alternative easement relief before the trial court despite the lack of any evidence of those argument in the record before us.

We recognize Rule 4:42-6 directs plaintiffs are entitled to relief "even though [they have] not demanded such relief in the pleadings, provided the parties have been given an adequate opportunity to be heard." Indeed, parties must be "fairly apprise[d] . . . of the claims and issues to be raised," Miltz v. Borroughs-Shelving, Div. of Lear Siegler, Inc., 203 N.J. Super. 451, 458 (App. Div. 1985) (citing Jersey City v. Hague, 18 N.J. 584, 601-03 (1955)).

On the record before us, we cannot fairly review plaintiffs' arguments on appeal as we cannot determine what, if any, alternative easement arguments were raised before the trial court and what consideration, if any, the court gave to those claims. Although Krause confirms plaintiffs argued their entitlement to alternative easements before the trial court, she argues those claims for relief should be barred from consideration, as they were not properly pled and

31

belatedly raised. Again, we have no ability to determine if Krause advanced, or the court considered this argument, and what it determined.

Whatever occurred, on the record presented, we are rendered incapable of reviewing whether the trial court correctly granted summary judgment in favor of Krause as it pertained to plaintiffs' requests for various alternative easements. As the parties do not clarify what was argued on summary judgment, and the court made no findings of fact or conclusions of law addressing the alternative easements arguments, we are constrained to remand solely for the court's consideration of plaintiffs' request for alternative easement relief and Krause's claims the arguments are waived, and regardless substantively meritless. See Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)) (A trial court's legal conclusions are essential "so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]."); see also R. 1:7-4(a) (requiring a trial court to "find the facts and state its conclusions of law"). There is simply nothing in the trial court's findings and decision to confirm the court considered these claims by applying the law to the summary judgment record.

A-2944-24

Generally, a court's "failure to provide reasons necessitates a remand." Allstate Ins. v. Fisher, 408 N.J. Super. 289, 303 (App. Div. 2009). When a court fails to provide reasons in support of its decision, "we are left with the option of remanding for a statement of reasons or reversing and remanding for consideration . . . anew." Ibid. Here, we are satisfied the latter is necessary. We also emphasize it is unclear whether these claims were ever properly presented to the trial court and thus make no finding the court erred in failing to create a sufficient record for our review.

We vacate the court's grant of summary judgment in favor of Krause and dismissal of the complaint only as to these alternative easement claims. We do not suggest the outcome on remand, nor do we restrict the manner in which the court conducts further proceedings to fully explore these issues.

Affirmed in part; vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-2944-24